FILED
OCT 15 2010
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

PRATTHANA ANSPACH,

Plaintiff,

vs.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

Defendant.

Court File No 10-5080

**COMPLAINT**

COMES NOW the Plaintiff, Pratthana Anspach, by and through her undersigned attorney, Gregory J. Sperlich of DeMersseman Jensen Christianson Stanton & Huffman, LLP, and for her Complaint against the above-named Defendant, hereby states and alleges as follows:

**The Parties**

**1.**

The Plaintiff, Pratthana Anspach, (hereinafter "Plaintiff") is a resident of Pennington County, Rapid City, South Dakota, and was at all times relevant hereto, and is the beneficiary of the policy of insurance issued and underwritten by Defendant United of Omaha Life Insurance Company. Plaintiff is the surviving wife of Christopher Anspach, who died on November 17, 2009.

**2.**

Upon information and belief, the Defendant United of Omaha Life Insurance Company (hereinafter "Defendant United of Omaha") is an insurer with its principal place of business located in Omaha, Nebraska. Defendant United of Omaha is authorized to do business and is doing business in the State of South Dakota.

Defendant United of Omaha is the insurer of benefits provided under the terms of an employee benefit life insurance policy. Defendant United of Omaha is the underwriter for Mutual of Omaha Insurance Company's life insurance policies, including the life insurance policy at issue in this action.

**Jurisdiction and Venue**

**3.**

This is a diversity action between citizens of different States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and because complete diversity exists between the parties.

**4.**

Venue is proper in this District Court pursuant to 28 U.S.C § 1391 as the contract giving rise to the claim was entered into in this District. Further, Plaintiff resides here.

**Statement of Facts**

**5.**

On or about February 28, 2006, Plaintiff began employment with the Pennington County State's Attorney's Office.

**6.**

Plaintiff spoke with Defendant's captive agent regarding benefit information, including life insurance provided and underwritten by Defendant United of Omaha.

**7.**

In September of 2008 all county employees were required to attend presentations by a captive agent for United of Omaha regarding what was termed

*voluntary term life insurance* underwritten by Defendant United of Omaha. Employees were not obligated to buy anything but were required to attend the meetings.

**8.**

Plaintiff Anspach attended the meeting and was interested in life insurance for herself, but at that time had no intention of purchasing life insurance for her husband, Christopher Anspach, due to his terminal cancer. Ms. Anspach, as well as everyone else at the meeting, was handed a packet of materials entitled Benefits Information which indicated that an employee or a spouse could purchase life insurance with a guaranteed issue amount. In addition, the agent with United of Omaha informed Ms. Anspach, and all others present at the meeting, that regardless of the state of anyone's health the insurance was a guaranteed issue amount.

**9.**

Plaintiff informed Defendant's agent that her husband, Christopher Anspach (hereinafter "Mr. Anspach"), was ill with cancer and inquired as to whether he was eligible to receive benefits in light of his condition. At that time, it was common, public knowledge that Mr. Anspach was ill with cancer.

**10.**

Defendant's agent informed Plaintiff that her husband was eligible for the life insurance policy underwritten by Defendant United of Omaha since the life insurance guaranteed issuance for an employee's spouse up to $50,000 as long as the employee elected and paid for life insurance coverage of $100,000. Moreover, Ms. Anspach was told that she must sign up within thirty days or a medical test would be required.

11.

Plaintiff requested a complete copy of the life insurance policy to review prior to electing coverage, but was informed that one was not available for her. As a result, she had to rely on Defendant's agent's representations.

12.

Plaintiff elected life insurance coverage, based on the representations of Defendant's agent, for herself in the amount of $100,000 and Primary dependent spouse life insurance coverage of $50,000 for her husband, Mr. Anspach, to become effective on October 1, 2008.

13.

Plaintiff named Mr. Anspach as the beneficiary of her life insurance benefits and Mr. Anspach named Plaintiff as the beneficiary of his life insurance benefits.

14.

On or about October 1, 2008, Defendant Untied of Omaha issued to Plaintiff Group Policy No. GLUG-AB41, and Second Policy No. GVTL-AB41.

15.

The Pennington County State's Attorney's Office deducted premiums from Plaintiff's paycheck and remitted payments to Defendant United of Omaha for Plaintiff's and Mr. Anspach's life insurance coverage. Pennington County did not pay any portion of the premium related to the life insurance coverage.

**16.**

The Defendant's Group Voluntary Term Life Insurance Coverage Summary of Coverage stated that Guaranteed Issue means the amount of insurance applied for which does not require evidence of good health.

**17.**

The life insurance policies that Plaintiff purchased for herself and Mr. Anspach are administered and insured by Defendant.

**18.**

Unfortunately, Mr. Anspach passed away on November 17, 2009.

**19.**

On or about December 4th, 2009, Plaintiff gave Defendant notice of Mr. Anspach's death and asserted a claim for benefits.

**20.**

Defendant denied Plaintiff's claim for benefits.

**21.**

Plaintiff duly appealed Defendant's determination, but Defendant upheld their own denial. All administrative remedies have been exhausted.

**COUNT I**

***Breach of Contract***

**22.**

Plaintiff hereby realleges paragraphs 1-21 of this Complaint and hereby incorporates them as if fully set forth herein.

**23.**

Defendant had a contract with Plaintiff whereby Defendant provided life insurance coverage for Plaintiff in the amount of $100,000 and Primary dependent spouse life insurance coverage of $50,000 for her husband, Mr. Anspach.

**24.**

Defendant breached its contract with Plaintiff by refusing to pay Plaintiff the life insurance benefits owed, pursuant to the Primary dependent spouse life insurance coverage in the amount of $50,000, when her husband passed away.

**25.**

As a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged in the amount of life insurance coverage that would have been provided by the life insurance policy to date, estimated to be approximately $50,000, plus interest. Plaintiff has also incurred attorneys' fees which were the likely and reasonably foreseeable result of the Defendant's breach of contract and are clearly ascertainable.

## COUNT II

***Equitable Estoppel***

**26.**

Plaintiff hereby realleges paragraphs 1-25 of this Complaint and hereby incorporates them as if fully set forth herein.

**27.**

Defendant trained and approved the procedure used by its agents with United of Omaha, including the agent in this case, to market and sell its life insurance policies.

**28.**

Plaintiff relied on the representations of Defendant's agent that Plaintiff's husband, Mr. Anspach, was eligible for the life insurance policy since the life insurance guaranteed issuance for an employee's spouse up to $50,000 as long as the employee elected life insurance coverage of $100,000.

**29.**

Plaintiff was without knowledge of the real facts and relied on Defendant's agent's representation and assurances by enrolling both her and Mr. Anspach in life insurance policies through Defendant.

**30.**

Plaintiff acted reasonably in justifiably relying on Defendant's agent's representations and assurances.

**31.**

If was foreseeable to the Defendant and its agent that the Plaintiff would rely on the agent's representations and assurances in electing and enrolling life insurance coverage for herself in the amount of $100,000 and Primary dependent spouse life insurance coverage of $50,000 for her husband, Mr. Anspach. Defendant's agent made such representations to Plaintiff with the intention that Plaintiff elect and enroll in Defendant's life insurance coverage for both her and her husband.

**32.**

Defendant and its agent had or should have had actual knowledge that the Plaintiff relied on the agent's representations and assurances.

**33.**

Defendant knew or should have known that Mr. Anspach was ill with cancer.

**34.**

Plaintiff suffered an unfair and severe detriment by Defendant's refusal to pay the life insurance benefits owed.

**35.**

It was foreseeable to Defendant and its agent that Plaintiff would suffer and will continue to suffer economic detriment in relying on the agent's representations and assurances regarding the life insurance coverage available for her and her husband.

**36.**

At all times relevant hereto, the agent was an agent with Defendant United of Omaha, and was acting within the scope of his actual, express, apparent, and/or implied authority, as well as acting within the scope of his agency duties. His conduct was reasonably foreseeable, and therefore, imputable to Defendant under the doctrine of Respondeat Superior.

## COUNT III

***Promissory Estoppel***

**37.**

Plaintiff hereby realleges paragraphs 1-36 of this Complaint and hereby incorporates them as if fully set forth herein.

**38.**

Plaintiff relied on the representations or promises of Defendant's agent that her husband, Mr. Anspach, was eligible for the life insurance policy at issue.

**39.**

As a result of Defendant's agent's representations, Plaintiff enrolled both herself and Mr. Anspach in life insurance policies through Defendant. Plaintiff fulfilled all of her obligations pursuant to those contracts of insurance.

**40.**

Plaintiff acted reasonably and justifiably in relying on Defendant's agent's representations, assurances or promises that Mr. Anspach was eligible for life insurance, that the life insurance was guaranteed issuance for Mr. Anspach up to $50,000 as long as Plaintiff elected life insurance coverage of $100,000 and that the life insurance benefits would be paid to Plaintiff upon Mr. Anspach's death.

**41.**

It was foreseeable to the Defendant and its agent that the Plaintiff would rely on the agent's representations, assurances or promises in electing and enrolling life insurance coverage for herself in the amount of $100,000 and Primary dependent spouse life insurance coverage of $50,000 for her husband.

**42.**

Defendant and its agent had or should have had actual knowledge that the Plaintiff relied on the agent's representations and assurances.

43.

Plaintiff suffered an unfair and substantial detriment in an economic sense by Defendant's refusal to pay the life insurance benefits owed.

44.

It was foreseeable to Defendants and its agent that Plaintiff would suffer and will continue to suffer economic detriment in relying on the agent's representations and assurances regarding the life insurance coverage available for her and her husband.

45.

Defendant's agent supplied incorrect and false information to Plaintiff regarding whether the spousal life insurance coverage was guaranteed to be issued and whether Mr. Anspach was eligible for life insurance coverage.

46.

Defendant's agent supplied such information in the course of attempting to convince Plaintiff to elect and enroll in Defendant's life insurance coverage, of which Defendant had a financial interest.

47.

Plaintiff purchased the life insurance policy at issue believing and reasonably relying upon Defendant's agent's representations, assurances or promises.

48.

At all material times, Defendant United of Omaha either knew, or should have known, that the representations made to Plaintiff by Defendant's agent concerning

whether Mr. Anspach was eligible for life insurance were false, fraudulent, and/or deceitful.

**49.**

At all material times, Plaintiff justifiably relied to her detriment on the false, fraudulent, and/or deceitful representations made to them by Defendant, through its agent, concerning whether Mr. Anspach was eligible for life insurance and suffered and continues to suffer damage as a direct and proximate result.

## COUNT IV

***Bad Faith***

**50.**

Plaintiff hereby realleges paragraphs 1-51 of this Complaint and hereby incorporates them as if fully set forth herein.

**51.**

United of Omaha knew or should have known that it had no reasonable basis to deny death benefits to Pratthana Anspach for Christopher Anspach.

**52.**

The Defendant asserted knowingly false grounds for the denial of the claim and they knew that the grounds for denial were in direct contradiction to the statements made by their agent at the time the contract was entered into.

**53.**

The Defendant in its denial letter set forth that should Ms. Anspach be denied her appeal by the company that she was free to pursue a claim under §502 of ERISA knowing that ERISA would not govern this claim.

**54.**

ERISA does not apply in that Plaintiff Anspach was, at the time of obtaining this insurance product, a government employee pursuant to 29 USCA §1002(32). Moreover, Plaintiff was responsible for paying and did pay all of the insurance premiums herself, and accordingly would have been exempted under ERISA's safe harbor provisions.

**55.**

The Defendant, United of Omaha, failed to perform a reasonable investigation before denying death benefits to Pratthana Anspach. The only investigation was to send a form to the doctor of Mr. Anspach asking him to check the box that Christopher Anspach was disabled prior to his death.

**56.**

The Defendant failed to give equal consideration to the interests of their insured and breached its duty of good faith and fair dealing with the Plaintiff.

**57.**

Upon information and belief, Defendant United of Omaha knew that it would not be paying death benefits in this case when Ms. Anspach signed up for the policy given the information of which Defendant was aware and the statements she made at the time she enrolled.

**58.**

The Defendant's behavior from the time that the policy was entered from the time the claim was denied through the appeals process was oppressive, fraudulent and malicious.

**59.**

United of Omaha created a sense of urgency and told Plaintiff that she had to complete the forms that day, or within 30 days, and if she waited medical tests would be required.

**60.**

Defendant United of Omaha acted in accordance with its standard practices, policies and procedures by inducing Plaintiff Anspach to sign up and pay for this plan and then denying the claim in direct contradiction to the statements of the agent.

**61.**

Plaintiff is aware of at least two other very similar incidences in which the agent for United of Omaha describes the product as a guaranteed issue and hands out literature indicating that the product is a guaranteed issue and the actual policy is not available for review by the insured and the company later denies for grounds similar to the denials in this case.

**COUNT V**

***Fraud***

**62.**

Plaintiff hereby realleges paragraphs 1-63 of this Complaint and hereby incorporates them as if fully set forth herein.

**63.**

United of Omaha's captive agent made factual representations to Plaintiff Anspach at the time she was presented information about the policy and completed the enrollment form. Namely, that as long as the spouse's benefit did not exceed $50,000, and as long as she purchased life insurance in the amount of $100,000, the policy was a guaranteed issue and no medical exam was necessary.

**64.**

This statement when made was untrue and known to be untrue. In that the policy, not available to Plaintiff at the time she enrolled, would say otherwise.

**65.**

These statements were made with the intent to deceive and for the purposes of inducing action on the part of the Plaintiff.

**66.**

United of Omaha's captive agents routinely make these false assertions. Plaintiff is aware of two identical cases in South Dakota.

**67.**

The Plaintiff was told that as long as she signed up for an amount that did not exceed five times her annual salary, and as long as her spouse's benefits did not exceed $50,000, no medical tests would be required. However, she was also told that if she did not sign up within the next 30 days that medical tests would be required.

**68.**

United of Omaha routinely denies claims for benefits, asserting that decedent was disabled at the time the policy was issued and hence never went into effect.

**69.**

Ultimately Plaintiff Anspach relied on these representations made by United of Omaha's captive agent and has suffered damages as a result.

**Prayer for Relief**

**WHEREFORE**, Plaintiff requests an award of compensatory damages; and punitive damages to punish their conduct in this present case and as the only way to deter the Defendant United of Omaha from continuing to employ these same methods against other potential insured; and for attorney's fees and costs; and for such other further relief that the Court deems just and equitable under the circumstances.

Dated this 15 day of October, 2010.

Gregory J. Sperlich
Michael V. Wheeler
DEMERSSEMAN JENSEN CHRISTIANSON STANTON & HUFFMAN, LLP
Attorneys for Plaintiff
516 5th Street, P.O. Box 1820
Rapid City, SD 57709
(605) 342-2814

**PLAINTIFF DEMANDS TRIAL BY JURY**

Gregory J. Sperlich

Michael V. Wheeler