UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PRATTHANA ANSPACH, | ) | CIV. NO. 10-5080-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING** |
| vs. | ) | **PLAINTIFF'S MOTION** |
| | ) | **TO COMPEL** |
| UNITED OF OMAHA LIFE | ) | **[DOCKET NO. 17]** |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Pratthana Anspach brings this action against United of Omaha Life Insurance Company ("United"), alleging that United has breached its contract for life insurance benefits with Mrs. Anspach. See Docket No. 1. Mrs. Anspach also asserts claims of equitable estoppel, promissory estoppel, fraud, and bad faith failure to pay insurance benefits. Id. She seeks compensatory and punitive damages against United. Id. This action is premised on the court's diversity jurisdiction, 28 U.S.C. § 1332.

Pending is Mrs. Anspach's motion to compel certain discovery responses from United. See Docket No. 17. United resists the motion. See Docket No. 25. The district court, the Honorable Jeffrey L. Viken, referred this motion to this magistrate judge for a decision pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The following facts are relevant to the pending discovery dispute. Mrs. Anspach became an employee of the Pennington County State's Attorney's Office on February 28, 2006.  Two and a half years later, in September 2008, all county employees were required to attend a presentation by United regarding voluntary term life insurance being offered by United to county employees.  At the time, Mrs. Anspach's spouse, Christopher Anspach, had been diagnosed with terminal cancer.

Mrs. Anspach asked the United agent who presented the information whether her husband, who she told the agent was ill with cancer, was eligible to receive benefits in light of his condition.  Mrs. Anspach alleges that the United agent told her that her husband was eligible for a United life insurance policy with benefits of $50,000, as long as Mrs. Anspach took out a policy on herself for $100,000.  The agent allegedly told Mrs. Anspach that she must sign up for the policy within 30 day in order to avoid a medical test for her spouse.

Mrs. Anspach alleges that she requested a copy of the policy before electing coverage, but the agent told her no policy was available.  Mrs. Anspach signed up for life insurance for her husband in the amount of $50,000 with herself as the beneficiary.  She also purchased a policy on her own life for $100,000 and named her husband as the beneficiary.  United issued both policies to the Anspaches around October 1, 2008.  Mrs. Anspach paid the

2

premiums on both policies with payroll deductions.  Mrs. Anspach alleges that the United policies issued on her and her husband's lives did not require evidence of good heath before the policies would be issued.

Mr. Anspach died on November 17, 2009.  Mrs. Anspach gave United notice of her husband's death within one month of that event and asserted a claim for benefits.  United denied the claim, telling Mrs. Anspach that her claim was covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*  Mrs. Anspach pursued all administrative appeals within United, but United did not change its final decision.  This lawsuit was subsequently filed.

In its answer to Mrs. Anspach's complaint, United stated that it needed to conduct discovery in this case before it could either admit or deny the assertion in Mrs. Anspach's complaint that ERISA did not apply to her claim.  See Docket No. 6, ¶ 11.  United went on to assert that if ERISA applied in this case, Mrs. Anspach's state law claims, claims for punitive damages, and right to a jury trial were preempted by ERISA.  Id.  The parties' Form 52 Report indicates that one of the legal issues to be resolved in this case is whether ERISA applies.  See Docket No. 8, page 3.

On March 10, 2011, Mrs. Anspach served United with 16 requests for the production of documents.  On April 18, 2011, the parties stipulated that the district court could enter a protective order to ensure that United was

3

protected from competitive disadvantage and that confidential information would be protected.  <u>See</u> Docket No. 11.  The court then issued a protective order.  <u>See</u> Docket No. 12.  The order protected *all* documents produced by United in discovery to Mrs. Anspach.  <u>Id.</u>  The order provided that the parties were prohibited from further disseminating the protected documents to any third party and from filing documents with the court unless they were sealed. <u>Id.</u>  The order also allowed Mrs. Anspach to challenge the protected status of any document by filing it with the court under seal and lodging an objection. <u>Id.</u>

After the protective order issued, United produced some, but not all, of the documents Mrs. Anspach had requested.  Those remaining requests are the subject of Mrs. Anspach's motion to compel.

Specifically, Mrs. Anspach requested claims files in two other South Dakota cases which she asserts were similar to hers and which she asserts that United handled similarly.  Request for Production Nos. 2 and 3 request the entire claims file for Micki Tibbetts' claim for the death of her spouse, Frederick C. Tibbetts, and the entire claims file for Timothy Hummel's claim for the death

of his spouse, Sandra Hummel.[1]  United's objection to the production of these two claims files are:  (1) that the documents are irrelevant, and (2) that the documents are protected by the attorney client and/or work product privileges/exception.[2]

Mrs. Anspach also requested documents from United in her Request No. 5 describing United's internal analysis as to applicability of ERISA to claims, whether a policy was covered by ERISA, and describing ERISA appeal rights.  United asserted three objections to this request:  (1) that the documents are irrelevant because United is not asserting that Mrs. Anspach's claim was covered by ERISA; (2) that the documents are protected by the attorney client and/or work product privileges/exception; and (3) that the documents may contain confidential, proprietary, or trade secret information.

---

[1]Mrs. Anspach seeks a motion to compel responses to requests number two and three only.  United, in its response in opposition, also discusses a request number ten.  The court does not address request for production number ten as  Mrs. Anspach has not taken issue with United's response to that request.

[2]United raises other objections in its brief that it did not previously state when responding to Mrs. Anspach's discovery requests.  For example, regarding requests for the claims files, United never stated in its discovery response that it was claiming the requests were "overbroad."  In its brief in opposition to Mrs. Anspach's motion to compel, United raises the "overbroad" objection for the first time.  The court restricts its discussion to those issues raised by United when it refused to produce the discovery.  Any other approach would encourage parties to continually change the issues at each new stage of a discovery dispute.

Finally, in Request Nos. 6 and 7, Mrs. Anspach requests the personnel files in their entirety and performance evaluations since 2005 of seven United employees who were involved in handling Mrs. Anspach's claim.  United asserts four objections to these requests:  (1) that the documents are irrelevant; (2) that the documents may contain confidential, proprietary, or trade secret information; (3) that the documents are protected by the employees' right to privacy; and (4) that the requests are overly broad.

**DISCUSSION**

**A.     Mrs. Anspach Has Satisfied the Meet-and-Confer Requirement**

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  See Fed. R. Civ. P. 37(a).  Mrs. Anspach's counsel has certified that he contacted opposing counsel prior to filing the instant motion to compel and attempted in good faith to resolve the parties' discovery dispute.  See Docket No. 18. Opposing counsel has not disputed this.  Thus, the court finds that the good faith requirements of D.S.D. Local Rule 37.1 and Federal Rule of Civil Procedure 37 have been met.

**B.      Standard Applicable to Discovery in Federal Court**

**1.      General Scope**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is
> as follows:  Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or
> defense–including the existence, description, nature, custody,
> condition, and location of any documents or other tangible things
> and the identity and location of persons who know of any
> discoverable matter.  For good cause, the court may order
> discovery of any matter relevant to the subject matter involved in
> the action.  Relevant information need not be admissible at the
> trial if the discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.  All discovery is subject to the
> limitations imposed by Rule 26(b)(2)(C).

<u>See</u> Fed. R. Civ. P. 26(b)(1).  Rule 26 contains specific limitations relative to

electronic discovery and other objections to providing discovery:

(B)      *Specific Limitations on Electronically Stored Information.*  A party need not
provide discovery of electronically stored information from sources that
the party identifies as not reasonably accessible because of undue
burden or cost.  On motion to compel discovery or for a protective order,
the party from whom discovery is sought must show that the information
is not reasonably accessible because of undue burden or cost.  If that
showing is made, the court may nonetheless order discovery from such
sources if the requesting party shows good cause, considering the
limitations of Rule 26(b)(2)(C).  The court may specify the conditions for
the discovery.

(C)      *When Required.*  On motion or on its own, the court must limit the
frequency or extent of discovery otherwise allowed by these rules or by
local rule if it determines that:

  (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

  (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

  (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

See Fed. R. Civ. P. 26(b)(2)(B) and (C).

  The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

### 2.    Assertion of Privilege

A party claiming a privilege as to requested discovery has the burden of

proving the basis for the application of the privilege:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial-preparation material, the party must:
>
>> (i)    expressly make the claim; and
>>
>> (ii)   describe the nature of the documents,
>>        communications, or tangible things not produced or
>>        disclosed–and do so in a manner that, without
>>        revealing information itself privileged or protected, will
>>        enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A).

### 3.    Relevancy

As stated above, Rule 26 permits discovery of anything relevant to a

claim or defense at issue in the case.  The advisory committee's note to the

2000 amendments to Rule 26(b)(1) provide guidance on how courts should

define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that
> discovery goes beyond material relevant to the parties' claims or
> defenses, the court would become involved to determine whether
> the discovery is relevant to the claims or defenses and, if not,
> whether good cause exists for authorizing it so long as it is relevant
> to the subject matter of the action.  The good-cause standard
> warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the
> actual claims and defenses involved in the action.  The dividing
> line between information relevant to the claims and defenses and
> that relevant only to the subject matter of the action cannot be

defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  Id.  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D.Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before

10

production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

With these standards in mind, the court now turns to the discovery requests objected to by United and which are the subject of Mrs. Anspach's motion.

## C.   Claims Files in the Hummel and Tibbetts' Claims

### 1.   Relevancy

United asserts an objection to this discovery request on the grounds that it is irrelevant. Mrs. Anspach responded with the following threshold showing of relevance.

Both the Hummel and Tibbetts' policies were the same type of policies as Mrs. Anspach's–guaranteed life insurance policies. All three policies were sold to the policy holders through their employers. Both Mrs. Tibbetts and Mr. Hummel paid for their premiums as Mrs. Anspach did--through payroll deductions. Mrs. Tibbetts' husband was ill with cancer at the time she bought the policy. Both Mr. Hummel and Mrs. Tibbetts submitted claims for their insured spouses when the spouses passed away. United denied both claims on

11

the same grounds that Mrs. Anspach's claim was denied.  United refused to give all three policy holders copies of their policies when they signed up for life insurance with United.  These claims files in the Hummel and Tibbetts cases appear to be relevant to Mrs. Anspach's claim for bad faith and to her request for punitive damages.

"In a bad faith case, 'the insured must show an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for the denial.' " Mudlin v. Hills Materials Co., 2007 S.D. 118, ¶ 6, 742 N.W.2d 49, 51 (brackets in original) (quoting Phen v. Progressive N. Ins. Co., 2003 S.D. 133, ¶ 24, 672 N.W.2d 52, 59).  " 'An insurance company is entitled to challenge claims which are fairly debatable and will be found liable only where it has intentionally . . . denied a claim without a reasonable basis.' " Mudlin, ¶ 6, 742 N.W.2d at 51 (quoting Phen, 2003 S.D. 133, ¶ 24, 672 N.W.2d at 59).

In awarding punitive damages, a jury is to evaluate:  (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.  Roth v. Farner-Bocken Co., 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665-66 (citing State

Farm v. Campbell, 538 U.S. 408, 418 (2003)).  In evaluating these factors, it is relevant whether the harm that was caused to Mrs. Anspach was a company policy or practice.  Id. at ¶ 65, 667 N.W.2d at 669.

In addition, because laws regarding business practices vary from one state to another, the Supreme Court has cautioned that evidence of a company's practices which are relevant to punitive damages should be limited to evidence of practices in the same state as the plaintiff.  Campbell, 538 U.S. at 419-24.  Here, Mrs. Anspach has shown that the Hummel and Tibbetts claims files involve claims that were filed in South Dakota.

United's handling of the Hummel and Tibbetts cases are relevant to both the bad faith claim and the request for punitive damages asserted by Mrs. Anspach in this case.  It appears that there may be evidence in the Hummel and Tibbetts files from which United could have discerned that its denials of those claims were without a reasonable basis.

Specifically, Mrs. Anspach alleges that the basis relied upon by United in denying her claim, and those in the Hummel and Tibbetts claims, is a violation of SDCL § 58-15-45.  The Tibbetts lawsuit was filed in December, 2008, approximately 15 months before United sent Mrs. Anspach the denial letter on her claim.  Similarly, the Hummel lawsuit was filed approximately 14 months before United sent Mrs. Anspach its denial letter in her case.  If United "learned" in the Hummel and Tibbetts cases that it lacked a reasonable basis

13

for the denial of those claims, United may have lacked a reasonable basis for asserting the same basis in Mrs. Anspach's case to deny her claim.

Also, the fact–if it is borne out by the claims files–that United handled the Hummel and Tibbetts claims in the same way it handled Mrs. Anspach's claim would support an assertion that the handling of Mrs. Anspach's claim was pursuant to company policy or practice, which is relevant to punitive damages.  United has not submitted sufficient information to rebut Mrs. Anspach's threshold showing of relevancy.  Accordingly, the court finds this discovery relevant.

### 2.    Privilege

With regard to the assertion of a privilege as a bar to discovery, there are both procedural and substantive requirements that must be satisfied before the privilege will be recognized.  Procedurally, Fed. R. Civ. P. 26(b)(5)(A) outlines what must be done to assert a privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i)    expressly make the claim; and
>
> (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A).

14

Although the federal rules of civil procedure and evidence apply in

diversity cases, Congress adopted the following rule as to evidentiary privileges:

> Except as otherwise required by the Constitution of the
> United States or provided by Act of Congress or in rules prescribed
> by the Supreme Court pursuant to statutory authority, the
> privilege of a witness, person, government, State, or political
> subdivision thereof shall be governed by the principles of the
> common law as they may be interpreted by the courts of the United
> States in light of reason and experience.  However, in civil actions
> and proceedings, with respect to an element of a claim or defense
> as to which State law supplies the rule of decision, the privilege of
> a witness, person, government, State, or political subdivision
> thereof shall be determined in accordance with State law.

See Fed. R. Evid. 501.  Although Rule 501 is a rule of evidence, and the current

dispute concerns an issue of discovery, Rule 501 applies to all stages of all

actions, cases, and proceedings, including discovery proceedings.  See Fed. R.

Evid. 1101(c); see also 3 Joseph M. McLaughlin, Jack B. Weinstein, and

Margaret A. Berger, Weinstein's Fed. Evidence, § 501.02[4] (2008).  A party

asserting a privilege with regard to items sought in discovery has the burden of

proving that a factual basis exists for that privilege.  Rabushka ex rel. United

States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997); Cottier v. City of Martin,

WL 4568989, **2-3 (D.S.D. Dec. 19, 2007); Fed. R. Civ. P. 26(b)(5)(A).

United has failed to present its claim of privilege procedurally as it has

not complied with the requirements of Fed. R. Civ. P. 26(b)(5)(A).  United has

not described the documents being withheld and stated which privilege applies

to which document.  United has also failed to present the court with

15

substantive support for its claim of either attorney-client privilege or work product.  Accordingly, the court grants Mrs. Anspach's request for an order compelling United to provide her with the claims files in the Hummel and Tibbetts claims as requested in request for production of documents numbers two and three.  The production of those claims files remains subject to the district court's previously-entered protective order.

**D.     Production of Documents Relating to ERISA**

Mrs. Anspach requested United to "produce any internal memorandum relating to the application of ERISA to claims and whether or not a policy is covered by ERISA and any memorandum on ERISA appeal rights language in denial letters."  United objected to producing these documents on several grounds.

**1.     Relevancy**

Again, United argues that this evidence is irrelevant.  However, Mrs. Anspach has argued that one of the facets of United's bad faith in her case was its false assertion that her claim was covered by ERISA.  If true, the fact that a claim was covered by ERISA would severely curtail Mrs. Anspach's rights and remedies.  Thus, argues Mrs. Anspach, United raised the specter of ERISA in order to discourage claimants from pursuing their claims and to discourage attorneys from representing them on such claims.  Mrs. Anspach

alleged that United told other claimants that their claims were governed by ERISA, when in fact they were not.[3]

The keystone of a bad faith action is that a claim was denied without reasonable basis and that the insurance company knew it lacked a reasonable basis at the time.  Other courts have found that if an insurance company fraudulently states that a claim is governed by ERISA, this can be evidence of bad faith.  Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1011 (9th Cir. 2004).

Mrs. Anspach also asserts that United had before it information that her particular claim was not covered by ERISA and that claims similar to hers were not covered by ERISA.  Mrs. Anspach asserts that this general and specific knowledge on United's part pre-dated the denial letter it sent to her invoking the application of ERISA.  If true, evidence of what United knew about the applicability of ERISA and when it knew it are clearly relevant to Mrs. Anspach's claim.

United stated in its objection that this document request was irrelevant because it was not asserting that ERISA was applicable in Mrs. Anspach's

---

[3]The dismissal in the Hummel case was occasioned by a realization on both parties' parts that ERISA did not apply to Mr. Hummel's claim.  See Hummel v. United of Omaha Life Ins. Co., Civ. No. 08-4210, Docket No. 19 (D.S.D. June 29, 2009).  United conceded that ERISA did not apply in the Hummel case seven months before issuing the denial letter to Mrs. Anspach in this case, telling her that ERISA applied to her claim.

litigation.  Whether United now takes that position is not, however, the issue. The issue is whether, before this litigation was initiated, United took that position in bad faith.

The court also notes that, although United says it is not now asserting ERISA applicability in Mrs. Anspach's case, United did raise the possibility of an ERISA defense in its answer.  United has never amended its answer to remove any mention of ERISA.  Therefore, whether ERISA applies to Mrs. Anspach's claim is still a "claim or defense" in this lawsuit.

### 2.    Privilege

As with the Hummel and Tibbetts claims files, United has failed to satisfy the requirements of Fed. R. Civ. P. 26(b)(5)(A) in order to assert attorney client privilege or work product doctrine as to the request for its internal ERISA documents.  United has not provided Mrs. Anspach in responding to her claim, nor has United provided to the court in response to the motion to compel, a statement "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed–and do[ing] so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim [of privilege]."  See Fed. R. Civ. P. 26(b)(5)(a).  It is United's burden to establish the protected nature of the documents sought and United has failed to carry this burden.

### 3.    Confidential Information

The final objection interposed by United is that the documents related to ERISA constitute confidential, proprietary, or trade secret information.  This is a spurious objection, given the district court's blanket protection order granting protected status to all documents produced by United to Mrs. Anspach in discovery.  Trade secret or proprietary information is not subject to a privilege which prohibits disclosure altogether.  Rather, if it is relevant, such information is entitled to a protective order by the court.  See Fed. R. Civ. P. 26(c)(1)(G).  That has already been granted.  The court grants Mrs. Anspach's motion to compel production of the ERISA documents as stated in her request for production number five.

### E.    United Employee Documents

The final category of documents the discovery of which is disputed by the parties concerns Mrs. Anspach's request for the personnel files and performance evaluations of seven named United employees.  United asserts four objections to the production of these documents.

### 1.    Relevancy

United claims the requested personnel files are not relevant. Mrs. Anspach explains that the names of each of the seven employees whose personnel files she seeks appear in her claims file which she received in

discovery from United.  Additionally, many of these same employees were involved in handling the claims in the Tibbetts, Hummel and Jakobek cases.[4]

As this court has noted on prior occasions, personnel files in bad faith actions may be discoverable because they may provide evidence of inappropriate reasons for the insurance company's actions with respect to the plaintiff's claim or an "improper corporate culture."  See  Lyon v. Bankers Life & Casualty Co., Civ. No. 09-5070-JLV, Docket No. 39, pages 17-18 (Jan. 14, 2011).  Personnel files may reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling.  This is certainly relevant to Mrs. Anspach's bad faith and punitive damages claims.

## 2.    Confidential Information

United also objects to producing this information on the grounds that the documents constitute confidential, proprietary, or trade secret information. Mrs. Anspach has already stipulated that United can and should redact all personal identifiers (address, phone number, social security number, and the like) from the files when United produces them.

The court finds that United's objection on confidentiality grounds is mooted by the district court's blanket protection order granting protected

---

[4]Jakobek refers to a claim filed by Fred Jakobek against United in this district.  See Civ. No. 09-1013.

status to all documents produced by United to Mrs. Anspach in discovery and by Mrs. Anspach's additional stipulation as to personal identifiers.  Trade secret or proprietary information is not subject to a privilege which prohibits disclosure altogether.  Rather, such information is entitled to a protective order by the court.  <u>See</u> Fed. R. Civ. P. 26(c)(1)(G).  That has already been granted.

### 3.   Right to Privacy in the Employees

While the presence of a protection order moots issues with regard to proprietary or trade secret information, it does not obviate the question of the right of the employees to the privacy of their own files.  <u>Raddatz v. Standard Register Co.</u>, 177 F.R.D. 446, 447 (D. Minn. 1997).  Personnel files of non-parties should be subject to discovery only after the court is satisfied that information in the files is relevant.  <u>Id.</u>  The fact that these seven employees were involved in the decision-making with regard to United's denial of Mrs. Anspach's claim, and that many of their names surfaced in the handling of the claims from Mr. Hummel, Mrs. Tibbetts, and Mr. Jakobek, leads the court to believe that the files contain relevant information.

Once the relevance of the files is determined, the employees' right to privacy is protected by limiting the information produced and ensuring that what is produced is held confidentially by the parties.  <u>Id.</u>  The latter has already been achieved by the district court's protection order.  The court addresses the former concern below.

21

### 4.     Overly Broad

United interposed the objection when responding to Mrs. Anspach's

discovery request that the request was overly broad.  United never explains

what it meant by this, either in its response to the discovery request or in its

response to this motion to compel.  There is a footnote in United's brief

indicating that the request should be limited to the three-year period

encompassing the year before, the year of, and the year after the denial of

Mrs. Anspach's claim.

The court notes that personnel files may contain documents completely

unrelated to the employee's performance or compensation.  For example, a

personnel file may contain documents showing that the employee elected to

have a health care account or a dependent care account, or records relating to

an employee assistance program.  There may be documentation of a work-

related injury suffered by the employee.  The employee may have taken a leave

of absence to care for a family member or to recover from an illness or surgery.

These documents would not be relevant to any claim or defense in

Mrs. Anspach's case, nor would they be relevant to the general subject matter

of this case.

The court believes these unrelated documents can be handled as follows:

when producing an employee's personnel file and performance reviews, each

copied page of that file should be BATES stamped by United.  Then, if United

believes certain documents are irrelevant because they fit into one of the above categories of documents discussed by the court (or an analogous type of document similarly unrelated to the claims and defenses in this case), United may choose to withhold that document.  When producing the personnel files to Mrs. Anspach, United must provide an index indicating:  (1) the BATES numbers of the documents withheld (which should be readily apparent because the sequence of numbers will be interrupted); (2) the date of the document withheld; and (3) the general nature of the document withheld (i.e. report of first injury, election to enroll in healthcare account, etc.).

As to the documents United produces, all personal identifiers should be redacted from the documents.  If Mrs. Anspach further disputes the withholding of certain documents listed by United in the index, she may request that the court review those documents *in camera* and the court will do so.

United is ordered to produce documents from personnel files for each year of the named employees' employment with United, and to produce each performance evaluation for each employee from 2005 forward (the last six years).  Unless and until United establishes facts which would lead the court to conclude that producing all years of an employee's file and performance reviews from 2005 forward would be unduly burdensome, the court will not assume that to be true.

**F.    Sanctions**

Rule 37 of the Federal Rules of Civil Procedure makes mandatory the assessment of expenses, including attorney's fees, associated with a successful motion to compel.  See Fed. R. Civ. P. 37(a)(5)(A).  An exception for this mandatory assessment of expenses is provided, *inter alia*, for situations where the position of the party resisting discovery was substantially justified. Mrs. Anspach requested an award of attorney's fees in making her motion. Other than to argue that the motion should be denied, United does not separately address the attorney's fees issue.

United's position with regard to the discovery requested in Mrs. Anspach's requests numbers two, three, and five was not substantially justified.  In each instance, United failed to rebut Mrs. Anspach's threshold showing of relevancy and failed to comply with even the minimum requirements of Rule 26 in its assertion of privilege as to these three discovery requests.  The court grants Mrs. Anspach's request for expenses as to that portion of her motion.

As to the requests for discovery for United's employees' personnel files and performance reviews (requests for production numbers six and seven), the law on that issue is more balanced and the court cannot conclude that United's position was not substantially justified.  The court will not award any sanctions against United for that proportionate amount of attorney time spent by

24

Mrs. Anspach's attorneys on the issue of the employees' personnel files and performance reviews.

**CONCLUSION**

Based on the foregoing discussion, it is hereby

ORDERED that Pratthana Anspach's motion to compel [Docket No. 17] is granted.  Defendant United of Omaha Life Insurance Company shall produce the documents requested in Mrs. Anspach's Request for Production Nos. 2, 3, 5, 6, and 7, subject to the limitations in the production of personnel files and performance reviews as discussed above.  These documents are to be produced to Mrs. Anspach at her counsel's office no later than 5:00 p.m. on September 30, 2011.  It is further

ORDERED that the Mrs. Anspach shall be entitled to reasonable attorney's fees and costs for that portion of her motion to compel involving requests for production of documents numbers two, three, and five. Mrs. Anspach shall file an affidavit with proof of service setting forth the time reasonably spent on that portion of the present motion, the hourly rate requested for attorney's fees and costs, and any factual matters pertinent to the motion for attorney's fees within twenty-one days of this order.  United shall file any and all objections to the allowance of fees within fourteen calendar days after receipt of service of plaintiff's motion and affidavit.  United may, by counter affidavit, controvert any of the factual matters contained in

Mrs. Anspach's motion and may assert any factual matters bearing on the award of attorney's fees. D.S.D. LR 54.1(C).  Mrs. Anspach shall have seven days thereafter to file a reply.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated August 31, 2011.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

26