UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PRATTHANA ANSPACH, | ) | CIV. 10-5080-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| UNITED OF OMAHA LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the court are two motions for summary judgment by Pratthana Anspach ("Pratthana"). Pratthana alleges United of Omaha Life Insurance Company ("United") wrongfully denied her benefits and seeks damages as a result.

## BACKGROUND

Pratthana began working for the Pennington County State's Attorney's Office in February of 2006. (Docket 49-3, Transcript ("TR"), p. 9, lns. 18-21). In September of 2008, Pratthana enrolled in a new voluntary term life insurance plan offered by Pennington County through United. (Docket 48, ¶¶ 7-8). She applied for a $100,000 policy on her own life and a $50,000 life insurance policy on the life of her husband, Christopher Anspach ("Christopher"). (Dockets 48, ¶¶ 7-8; 52, ¶¶ 7-8). Christopher had previously been diagnosed with Myasthenia Gravis, a cancer of the thymus gland, and had recently undergone additional treatment just prior to the

application. (Dockets 48, ¶ 6; 52, ¶ 6). Pratthana paid all premiums due through a payroll deduction. (Dockets 48, ¶ 11; 52, ¶ 11).

On November 17, 2009, Christopher passed away. (Dockets 48, ¶ 12; 52, ¶ 12). Pratthana provided timely notice of Christopher's death to United and requested the payment of benefits in accordance with the policy. (Dockets 48, ¶ 13; 52, ¶ 13). In a letter dated February 16, 2010, United stated Christopher was disabled at the time the policy was to take effect. (Docket 55-1, pp. 1-2). Under the terms of the policy, coverage would not be operative for a dependent who was disabled on the date the policy was to be effective. Id. Rather, coverage would become effective when the dependent was " 'able to fully resume all usual and customary duties and activities or [was] able to work for wage or profit.' " Id. at p. 2. As a result, United concluded the policy was not effective at the time of Christopher's death. Id. Pratthana was denied benefits and was told to "contact the master policy holder with regard to any applicable refund of premiums." (Docket 49-3, TR, p. 85, lns. 21-22).

Pratthana appealed United's initial determination. On September 27, 2010, United denied her appeal. (Docket 55-2). On October 15, 2010, Pratthana commenced this action alleging breach of contract, equitable estoppel, promissory estoppel, bad faith, and fraud. (Docket 1). On November 7, 2012, she amended her complaint and added a claim of unfair

trade practices. (Docket 79). Pratthana now moves for summary judgment on her breach of contract claim. (Dockets 46 & 62).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to

3

"make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## DISCUSSION

**A. Applicable Law**

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as it is a diversity action. In diversity actions, the court applies the substantive law of the forum state. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002). In this case, the forum state is South Dakota. Accordingly, the court shall apply South Dakota law.

4

### B. Was Christopher Anspach an Insured?

#### 1. Disability

Before determining whether a breach of the insurance contract occurred, the court must first determine whether Christopher was an insured covered by the contract. "Insurance contract interpretation, as well as statutory construction, are questions of law[.]" Auto-Owners Ins. Co. v. Hansen Housing, Inc., 604 N.W.2d 504, 509 (S.D. 2000). United contends Christopher never became an "insured" because he was disabled at the time the policy was to become effective and was never declared "not disabled" thereafter. (Docket 53, p. 6). The policy sets forth the conditions under which coverage may commence. It states:

> **When Dependent Insurance Begins**
> When You and the Policyholder share in the cost of Dependent insurance or, when You pay 100% of the cost of Dependent insurance, You may request Dependent insurance by properly completing and signing an enrollment form acceptable to Us and submitting the form to the Policyholder (who will then submit the form to Us) within 31 days following the day the Dependent becomes eligible.
>
> Insurance for a Dependent, other than a child born while You are insured under this Policy, who is confined
>     (a)    in a Hospital as an inpatient;
>     (b)    in any institution or facility other than a Hospital; or
>     (c)    at home and currently under the care or supervision of a Physician;
> on the day insurance is to begin will not take effect until such confinement ends or is no longer medically necessary as determined by Us or an independent medical review arranged by Us. . . .

5

> Insurance for a Dependent who is physically or mentally disabled to the extent such Dependent is unable to perform all of the usual and customary duties and activities of a person who is the same age and sex who is in good health or is not able to engage in any work or occupation for wage or profit will not take effect until the Dependent is able to fully resume all usual and customary duties and activities or is able to work for wage or profit.
>
> An eligible Dependent will be insured on the latest of the day
>     (a)    You become insured;
>     (b)    You acquire the eligible Dependent; or
>     (c)    You properly complete and sign an enrollment form acceptable to Us for Dependent insurance and submit it as described above.

(Docket 70-1, p. 26).

Under the terms of the policy, coverage was to become effective on October 1, 2008. (Docket 55-1, p. 2). The record reflects Christopher received a medical retirement, also referred to by the parties as a disability retirement, from the military in 1991 after his cancer diagnosis. (Docket 49-3, TR, p. 24, lns. 8-22). Christopher was also receiving disability benefits from the Social Security Administration during the period in question. (Docket 49-3, TR, p. 101, lns. 11-13). Additionally, United received a Report of Deceased's Disability Prior to Death form which was completed by Christopher's treating physician, Dr. Robert Vosler. (Docket 55-2, p. 2). United's letter denying Mrs. Anspach's appeal summarizes Dr. Vosler's statements as follows:

> Dr. Vosler indicates that Christopher Anspach had the inability to walk due to overwhelming cancer. He indicates that he was chronically disabled for several years prior to seeing Dr. Vosler in

> 1998.  This form indicates that Mr. Anspach was totally disabled
> to the extent that he was prevented from engaging any occupation
> or employment and that this total disability existed continuously
> from the date he first became disabled to the date of his death.

<u>Id.</u>

Furthermore, Pratthana had notice of the potential effect of Christopher's disability at the time she applied for coverage.  The enrollment form signed by Pratthana provides as follows:

> I represent that the information I have provided in this enrollment form is complete, true and accurate to the best of my knowledge. I understand that payment of premiums does not ensure my eligibility for coverage.  I understand and agree that I must satisfy all active work and/or active employment requirements that pertain to the policy to be eligible for coverage.  I understand and agree that life insurance coverage for my eligible dependent(s) may be delayed if they are confined (at home, in a hospital, or in any other institution or facility) or disabled on the date insurance would otherwise begin, in accordance with the terms of the policy. Should I decline coverage(s), I understand and accept the Waiver of Group Insurance provisions that follow.
>
> By signing below, I acknowledge that I understand and agree to the above statements, and that I have read and understand the benefit summaries provided to me for each line of coverage.

(Docket 55-3).  Based upon these undisputed facts, the court finds Christopher was disabled as of the effective date of the policy and remained disabled until the date of his death.  As a result, coverage under the policy did not become effective prior to the date of Christopher's death.

## 2. SDCL § 58-15-45

Pratthana contends SDCL § 58-15-45 prohibits United from excluding coverage for Christopher. South Dakota Codified Laws, § 58-15-45 provides "[n]o policy of life insurance may be delivered or issued for delivery in this state if it contains any provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status."

"Statutory interpretation and application are questions of law." Block v. Drake, 681 N.W.2d 460, 463 (S.D. 2004). The South Dakota Supreme Court provided the following guidance for a court engaged in statutory construction:

> [S]tatutory construction is an exercise to determine legislative intent. In analyzing statutory language we adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and effect and not resort to statutory construction. When we must, however, resort to statutory construction, the intent of the legislature is derived from the plain, ordinary and popular meaning of statutory language.

R.B.O. v. Congregation of Priests of Sacred Heart, Inc., 806 N.W.2d 907, 914 (S.D. 2011) (quoting State Auto Insurance Cos. v. B.N.C., 702 N.W.2d 379, 386 (S.D. 2005)).

Section 58-15-45 prohibits an insurer from limiting liability under a life insurance policy for an insured who is deemed to be in a specified

status.  The plain meaning of the word "insured" is "a person whose life, physical well-being, or property is the subject of insurance: the owner of a policy of insurance: policyholder[.]"  Webster's Third New International Dictionary, 1173 (2002).  Black's Law Dictionary defines "insured" as "[a] person who is covered or protected by an insurance policy."  Black's Law Dictionary, 879 (9th ed. 2009).  Christopher, however, was not properly the "subject of insurance," nor "covered or protected by an insurance policy" as the policy never became effective.  Therefore, Christopher was not an insured for the purposes of § 58-15-45.  As a result, § 58-15-45 does not prohibit United from determining Christopher's eligibility for coverage.

Pratthana contends the South Dakota Division of Insurance has informed United its confined/disabled exclusion violates § 58-15-45.  (Docket 48, ¶ 21).  The letter cited by Pratthana in support of this contention involves the case of Jakobek v. United Omaha Life Insurance Co., No. CIV 09-1013, 2010 WL 2942014 (D.S.D. July 27, 2010).  (Docket 49-4).  In Jakobek, United denied benefits under the confinement exclusion.  2010 WL 2942014, *1.  Jakobek was previously enrolled for coverage in a group life insurance plan through his workplace.  Id.  On January 1, 2007, United began providing the coverage for all employees who worked at least full time for 60 days.  Id.  Jakobek was hospitalized at the time United became the provider.  Jakobek was intermittently hospitalized in January of

9

2007 and thereafter did not return to work. Id. In denying coverage, United claimed Jakobek was not a full-time employee at the time the policy became effective, despite the employer's production of e-mails and cell phone records verifying Jakobek worked from his hospital room. Id. at *2. The South Dakota Division of Insurance informed United of its position that the policy provision delaying the effective date of coverage for an employee who was confined was in violation of SDCL § 58-15-45. (Docket 49-4). The district court found there was not a master policy in force between United and Jakobek's employer on January 1, 2007, which would have provided for the issuance of certificates of insurance which, in turn, would have alerted Jakobek to the coverage exclusions of the policy. See Jakobek, 2010 WL 2942014, *3. The court then, without reference to the South Dakota Division of Insurance letter, rejected United's assertions Jakobek was not an insured for the purposes of SDCL § 58-15-45 and denied United's motion for summary judgment. Id.

Jakobek was entitled to coverage because he met the eligibility requirements, despite United's assertions to the contrary. Unlike Jakobek, there is no evidence in the record Christopher was eligible for coverage at any time from the date of application through the date of his death. Christopher was disabled at all times and, under the terms of the policy, would not have been accepted as an insured by United.

### 3. SDCL § 58-16-35

Pratthana next asserts United cannot deny coverage under SDCL § 58-16-35. The statute provides:

> A policy of group life insurance shall contain a provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by any person insured under the policy relating to the person's insurability may be used in contesting the validity of the insurance with respect to which such statement was made, after such insurance has been in force prior to the contest for a period of two years during such person's lifetime. . . . [nor] unless it is contained in a written instrument signed by that person.

SDCL § 58-16-35.

United issued a master policy to Pennington County. The master policy provides as follows:

> 9.  INCONTESTABLE CLAUSE
> The Company will not contest the validity of this Policy after it has been in force ***one year***, except for nonpayment of premium.

(Docket 70-2, p. 4) (emphasis added).

Under the master policy, United issued certificates of insurance to Pennington County which were to be delivered to the insureds. Id. The certificate of insurance provides as follows:

> The benefits described in this Certificate are subject to the terms and conditions of the policy. Benefits are effective only if you and your dependent(s) are eligible for the insurance, become insured and remain insured as described in this Certificate.

(Docket 70-1, p. 10.) The certificate further provides:

11

> We may use misstatements or omissions in the application of an Insured Person to contest the validity of insurance, reduce coverage or deny a claim, but We must first furnish You or Your beneficiary with a copy of that application. We will not use a person's application to contest or reduce insurance which has been in force for **two years** or more during that person's lifetime. However, if You or Your dependent are not eligible for insurance, there is no time limit on Our right to contest insurance or deny a claim.

Id. at p. 48 (emphasis added).

As previously noted, the policy was to become effective on October 1, 2008. (Docket 55-1, p. 2). Christopher passed away on November 17, 2009. (Dockets 48, ¶ 12; 52, ¶ 12). For Pratthana's claim for insurance to be viable, the court would have to find two things: (1) United cannot contest Christopher's eligibility under South Dakota's incontestability statute, and (2) the incontestability term in the master policy controls the insurance contract.

Unfortunately, South Dakota has not addressed the issue of whether an insurance company may contest the eligibility of a decedent under this clause. As the United States Court of Appeals for the Eighth Circuit and the parties have noted, there is no consensus regarding whether eligibility may be questioned in light of an incontestability clause. See McDaniel v. Medical Life Insurance Co., 195 F.3d 999, 1004 (8th Cir. 1999). See also Dockets 62, pp. 7-10; 68, pp. 18-24.

Pratthana urges the court to follow the reasoning set forth in Simpson v. Phoenix Mutual Life Insurance Company, 247 N.E.2d 655 (Ct. App. NY

1969). (Dockets 62, pp. 8-10; 77, pp.18-20). Simpson applied for coverage in a group life insurance plan. Simpson, 245 N.E.2d at 656. Under the terms of the plan, employees who worked 30 hours or more were eligible to enroll. Id. After Simpson passed away, his widow filed a claim for the proceeds of the policy. Id. The insurance company discovered Simpson did not work 30 hours per week as required for eligibility under the plan and Phoenix denied the claim for benefits. Id. Simpson's widow argued Phoenix was barred from denying coverage under the policy's incontestability clause. Id. The New York Court of Appeals found Phoenix could have discovered at the time Simpson applied whether he was eligible for coverage but chose not to do so. Id. at 659. The court reasoned "[i]t is only those risks which could not be ascertained at the time of contracting which can properly be viewed as a limitation on the risk of insurance." Id. at 658. As a result, the court concluded Phoenix could not contest Simpson's eligibility under the incontestability clause. Id. at 658-59.

This court, however, finds the Eighth Circuit's reasoning in McDaniel to be more persuasive. In McDaniel, several years after applying for coverage in a group life insurance plan, McDaniel passed away and his widow sought the proceeds of the policy. McDaniel, 195 F.3d at 1001. The insurance company, MedLife, denied the claim contending McDaniel was never covered by the policy. Id. Though the Eighth Circuit exercised

13

jurisdiction over the matter under the provisions of ERISA, the court looked to state law for guidance. Id. at 1002. Based upon its review of the applicable Ohio statute and limited caselaw, the Eighth Circuit concluded the widow "had the burden of proving [McDaniel] was eligible for life insurance benefits 'under the specific language of the policy.' " Id. at 1004 (quoting John Hancock Mut. Life Ins. Co. v. Hicks, 183 N.E. 93 (Ohio 1931)).[1] In so holding, the Eighth Circuit rejected the reasoning of Simpson and stated "[i]mplicit in our decision is our belief that the issue of eligibility relates to the risk assumed by the insurer under the terms of the policy." McDaniel, 195 F.3d at 1004.

The court finds the passing of time after the issuance of a policy does not mandate coverage. Id. As United points out, the statute only applies to

---

[1] Ohio's incontestability law is similar to South Dakota's. See Ohio Rev. Cod. Ann. § 3915.05(C); SDCL § 58-16-35. It provides in pertinent part: "No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless such policy contains:
. . .
(C)    A provision that the policy and the application therefor, a copy of which application must be indorsed on the policy shall constitute the entire contract between the parties and shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date, except for nonpayment of premiums, except for violations of the conditions relating to naval or military service in time of war or to aeronautics, and except at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident or by accidental means[.]" Ohio Rev. Cod. Ann. § 3915.05(C).

instances where the policy has been "in force." Here, the policy never became operative. The incontestability statute and clause protect an insured within the limits of the policy. See Simpson, 247 N.E.2d at 657 (quoting Matter of Metropolitan Life Ins. Co. v. Conway, 169 N.E. 642, 643 (Ct. App. NY 1930)).[2] It does not, however, relieve Pratthana of demonstrating a right to recover. See McDaniel, 195 F.3d at 1004. As it cannot be shown an effective policy existed, Pratthana is unable to establish a right to recover.

Having concluded United may contest Christopher's eligibility, the court need not reach a determination regarding whether the incontestability clause in the master policy or the certificate of insurance controls. Pratthana's motion for supplemental briefing on this point (Docket 83) is moot.

**CONCLUSION**

Having reviewed the undisputed facts, the court concludes Christopher was disabled at all pertinent times. Under the terms of the policy, Christopher was not eligible for coverage under the group life

---

[2]In Conway, Chief Judge Cardozo wrote, "[t]he provision that a policy shall be incontestable after it has been in force during the lifetime of the isnured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken." 169 N.E. at 642.

15

insurance policy. As a result, the policy did not become effective prior to Christopher's passing. The court, therefore, concludes United did not engage in a breach of contract. Accordingly, it is hereby

ORDERED that plaintiff's motions for summary judgment (Dockets 46 & 62) are denied.

IT IS FURTHER ORDERED that Pratthana's motion to file a supplemental memorandum (Docket 83) is denied as moot.

Dated March 6, 2013.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE